UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

SECURITIES AND EXCHANGE
COMMISSION,

                      Plaintiff,

      v.

ANTHONY SALANDRA

                      Defendant.

Civil Case No.

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendant Anthony Salandra ("Salandra" or "Defendant") and alleges as follows:

## SUMMARY

1. Between October 2017 and January 2020 (the "Relevant Period"), Salandra participated in a fraudulent scheme to manipulate the market for securities of publicly-traded companies by creating and disseminating false rumors designed to cause the price of the target company's stock and options to rise temporarily.

2. Salandra, a former day trader, helped select the companies that became the subjects of the false rumors, often reviewed the false rumors created by others, and occasionally edited them before the rumors were sent to the lead trader ("Trader A") for dissemination. Trader A then disseminated the false rumors, timed to maximize impact, via instant messenger to numerous contacts at real-time financial news services, financial chat rooms, and certain other financial news purveyors. Some of these contacts then, within minutes, if not seconds, further disseminated the rumors through their news services and in chat rooms and message boards. As a result, the prices of the companies' securities were artificially inflated for a brief period until they were corrected by the market.

3. Between December 2017 and March 2019, Salandra traded around the dissemination of these false rumors at least 92 times, earning $132,560 in ill-gotten gains.

4. By virtue of the conduct alleged herein, Salandra violated, and unless restrained and enjoined will violate again, Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and Rule 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

5. The Commission brings this action pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1]. The Commission seeks a judgment (1) permanently

enjoining Salandra from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; and (2) ordering Salandra to pay disgorgement of $132,560, plus prejudgment interest of $22,847.41 and civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] in an amount to be determined by the Court upon motion of the Commission.  The Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action pursuant to Section 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) , 78u(e), 78u-l, and 78aa].

7.  Venue lies in this District pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  In particular, certain of the acts, practices, transactions, and courses of business constituting the violations occurred within the Northern District of Georgia.

8.  Defendant communicated regularly throughout the period with Trader A and another scheme participant ("Trader B"), both of whom, during the time of the events described herein, resided within the Northern District of Georgia. Defendant's communications with Trader A and Trader B included

communications containing the false rumors and enabled Defendant to execute trades designed to profit from the price manipulation caused by the scheme.

## DEFENDANT

9. Salandra, age 57, resides in Delray Beach, Florida and resided there during the allegations in the Complaint. During much of the Relevant Period, Salandra was a day trader associated with a registered broker-dealer at which he traded securities for his own account.

## FACTS

**I.  Salandra and the Other Scheme Participants Create and Disseminate False Rumors.**

10. Salandra has known Trader B and another scheme participants ("Trader C") for decades, having previously worked with both of them at securities trading firms. In approximately 2016, Salandra introduced Trader B and Trader C to Trader A, after which the scheme participants began regularly discussing trading ideas via phone calls, instant messenger, and encrypted communication application.

11. In late 2016, Salandra and the other scheme participants decided that, in order to ensure that they received market moving rumors early enough to trade profitably around them, they should create false rumors about publicly traded companies, utilizing their knowledge of the markets to craft believable rumors.

12. Salandra, Trader B and Trader C began to regularly discuss companies that they considered to be good subjects for false rumors. On many occasions, they solicited Trader A's opinion regarding whether a particular company would be a good subject for a rumor. Based on those discussions, Trader B and/or Trader C composed rumors about corporate mergers or acquisitions, large investments by hedge funds or private equity firms, or other potential market-moving events.

13. These false rumors targeted companies with publicly-traded short-term call options and were designed to maximize the price impact. The rumors were false and misleading, having been created out of thin air by the scheme participants.

14. Salandra reviewed the rumors and occasionally edited them. After Salandra, Trader B and Trader C agreed on the final text of the rumor, one of them would send the rumor to Trader A, who resided in northern Georgia.

15. Trader A then transmitted the false rumor via instant messenger to his numerous contacts at real-time financial news services, subscription-based financial chat rooms, and other financial news purveyors with sizable followings. Within minutes, if not seconds, the false rumor began appearing as "chatter" – i.e., the subject of discussion – on several of the financial news services and in the chat rooms and message boards that had been contacted. Trader A also shared the rumor with Trader D, the host of a daily subscription based real-time trading

broadcast who was based in Northern New Jersey. Trader D would share information regarding the false rumor on his trading broadcast.

16. In some instances, Salandra and Trader C also directly sent the rumor to their financial news industry contacts.

17. This process of creating and disseminating false rumors was repeated many times over the Relevant Period.

## II. Salandra Trades Profitably Around the False Rumors.

18. Before the false rumor was disseminated, Salandra, Trader A, Trader B, Trader C and Trader D purchased securities of the publicly-traded company that was the subject of the false rumor.

19. Salandra purchased a combination of stock and short-term call options that usually expired within a day or two. His purchases typically occurred from between several hours to a few seconds before the rumor was disseminated by Trader A. On rare occasions, Salandra began purchasing securities the day before Trader A disseminated the false rumor.

20. The spread of the false rumors through various news services and in financial chat rooms, as well as the scheme participants' own purchases, caused an uptick in trading volume and typically resulted in an increase in the subject companies' securities prices. Though the percentage increase in the company's stock price was usually modest (typically less than 2%), the percentage increase in

the price of the company's short-term call options was frequently significant (often exceeding 25%).

21. All of the scheme participants, including Salandra, almost always began selling their positions within minutes, if not seconds, after Trader A pushed the false rumor out to his industry contacts.

22. Salandra traded at least 92 times around the false rumors, earning $132,560 in ill-gotten gains between December 2017 and March 2019. An Appendix identifying the date and ticker symbol of the 92 instances, as well as the amount of profits Salandra earned from his trading in each instance is attached hereto.

### III. Examples of Salandra's Participation in the Market Manipulation Fraud

#### A. February 2018 Company A Rumor

23. On February 1, 2018 at 10:06:59 am, Salandra sent a message to Trader B and Trader C asking what was happening with respect to a rumor about Company A. Trader B responded that he was "working on it." At 10:25:02 am, Trader C sent the following proposed rumor to Salandra and Trader B:

> A spokeswoman for the California Department of Forestry and Fire Protection is stating that after thorough investigation it has determined that the fires that decimated a Santa Rosa neighborhood and killed 21 people was caused by electrical equipment owned, installed, and maintained by a third party exonerating [Company A] from all liability.

24. Trader B responded "seller let's wait" and that "will let you know when I buy." At 11:37:09 am, Trader B messaged Salandra and Trader C that he had purchased securities in Company A. Thirty seconds later, Trader C messaged Trader A to "pik [sic] up," and at 11:40:57 am, Trader C sent the rumor to Trader A. At 11:48:58 am, nearly eight minutes after he first received the rumor, Trader A disseminated the rumor via instant messenger to his financial headline news services and chatroom contacts.

25. Salandra began purchasing Company A stock and call options at 11:31:11 am – 17 minutes before Trader A pushed the rumor – and continued purchasing until 11:49:08 am – ten seconds after Trader A pushed the rumor.

26. The false rumor was repeated by the financial websites and chat rooms and promptly caused an increase in the trading volume and price of Company A's stock and options. The price increase was so significant that trading in Company A securities was temporarily halted at 11:53 am and spokespersons for Company A and the California Department of Forestry and Fire Protection each subsequently issued respective statements that the rumor was false.

27. Salandra began selling his Company A securities at 11:49:56 am, less than one minute after Trader A pushed the rumor, resulting in unlawful profits of $12,035. Trader A, Trader B, and Trader C also traded around the Company A rumor, generating over $70,000 in unlawful profits.

### B. July 2018 Company B Rumor

28. On July 25, 2018, Salandra, Trader B and Trader C discussed disseminating the rumor "Hearing that [Company C] has made an offer to acquire [Company B] for $50 a share." They decided to hold off sending the rumor to Trader A because Trader C noted there was a "seller in [Company B]."

29. The next morning, July 26, 2018, at 8:55:31 am, Trader B sent Salandra the Company B rumor, to which Salandra responded "[Company B] looks good." At 10:48:59 am, Trader B sent the rumor to Trader A and informed Salandra and Trader C that "I sent" and "he is doing it." At 10:49:53 am, Trader A pushed the rumor to his financial headline news services and chatroom contacts.

30. Between 10:43:46 am and 10:46:11 am, minutes before Trader A pushed the rumor, Salandra purchased a combination of Company B stock and call options.

31. The financial websites and chat rooms repeated the false rumor, which promptly caused an increase in the trading volume and price of Company B's stock and options prices.

32. At 10:50:11 am, less than 30 seconds after Patel disseminated the rumor, Salandra began selling the Company B stock and call options he had purchased, resulting in ill-gotten gains of $2,405. The other scheme participants also profitably traded around the Company B rumor, generating approximately $30,000 in ill-gotten gains.

9

## FIRST CLAIM FOR RELIEF

### Violation of Section 17(a) of the Securities Act

33. The Commission realleges and incorporates by reference paragraphs 1 through 32, as though fully set forth herein.

34. By virtue of the foregoing, Salandra, directly or indirectly, singly or in concert with others, in the offer or sale of any security, with scienter, used the means or instruments of transportation or communication in interstate commerce or of the mails to: (a) employ any device, scheme, or artifice to defraud; (b) obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in any transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

35. By virtue of the foregoing, Ross, directly or indirectly, violated and, unless restrained and enjoined, will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) Thereunder

36. The Commission realleges and incorporates by reference paragraphs 1 through 35, as though fully set forth herein.

37. By virtue of the foregoing, Salandra, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to: (1) employ devices, schemes, or artifices to defraud; and (2) engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

38. By virtue of the foregoing, Salandra, directly or indirectly, violated and, unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Judgment:

### I.

Finding that Salandra violated the provisions of the federal securities laws as alleged herein;

### II.

Permanently restraining and enjoining Salandra and his agents, servants, employees, and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from, directly or indirectly, engaging in conduct in violation of Section 17(a) of the

11

Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Ordering Salandra to pay disgorgement of $132,560, along with prejudgment interest of $22,847.41 pursuant to Section 21(d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(7)].

### IV.

Ordering Salandra to pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Court shall determine the amounts of the civil penalty upon motion of the Commission; and

### V.

Granting such other and further relief as this Court may deem just and proper.

Dated: April 11, 2022

Respectfully submitted,

/s James M. Carlson_____
James M. Carlson
CarlsonJa@sec.gov
(202) 551-3711

Securities and Exchange Commission
100 F Street NE
Washington, D.C. 20549
Counsel for Division of Enforcement

# APPENDIX

|    | **Rumor/Trade Date** | **Ticker Symbol** | **Salandra's Trading Profits** |
|----|------------|------|---------|
| 1  | 12/12/2017 | PRGO | $302    |
| 2  | 12/13/2017 | XLNX | $539    |
| 3  | 12/20/2017 | CBS  | $1,768  |
| 4  | 12/21/2017 | ETFC | $1,419  |
| 5  | 1/3/2018   | HUM  | $2,226  |
| 6  | 1/8/2018   | BBBY | $41     |
| 7  | 1/9/2018   | CI   | $2,612  |
| 8  | 1/12/2018  | YELP | $2,920  |
| 9  | 1/18/2018  | EA   | $1,823  |
| 10 | 1/18/2018  | IP   | $1,943  |
| 11 | 1/19/2018  | FOSL | $879    |
| 12 | 1/19/2018  | ULTA | $2,615  |
| 13 | 1/22/2018  | AMD  | $315    |
| 14 | 1/23/2018  | PEP  | $913    |
| 15 | 1/25/2018  | JD   | $278    |
| 16 | 1/29/2018  | MOS  | $1,617  |
| 17 | 2/1/2018   | PCG  | $12,035 |
| 18 | 2/13/2018  | UPS  | $6,176  |
| 19 | 2/14/2018  | TIF  | $2,744  |
| 20 | 2/15/2018  | TMUS | $4,763  |
| 21 | 2/16/2018  | WYNN | $5,489  |
| 22 | 2/20/2018  | CREE | $1,597  |
| 23 | 2/22/2018  | LLY  | $695    |
| 24 | 3/1/2018   | TXT  | $1,127  |
| 25 | 3/6/2018   | ON   | $1,751  |
| 26 | 3/7/2018   | HFC  | $606    |
| 27 | 3/8/2018   | DIS  | $2,064  |
| 28 | 3/15/2018  | AMAT | $1,128  |
| 29 | 3/15/2018  | GLW  | $228    |
| 30 | 3/23/2018  | HES  |         |
| 31 | 3/26/2018  | TAP  |         |
| 32 | 3/27/2018  | FOSL | $627    |
| 33 | 4/5/2018   | SYF  | $1,762  |
| 34 | 4/10/2018  | GRA  | $1,242  |
| 35 | 4/10/2018  | WMB  | $692    |
| 36 | 4/11/2018  | LNG  | $3,083  |
| 37 | 4/12/2018  | HOG  | $2,700  |
| 38 | 4/12/2018  | LUV  | $3,560  |
| 39 | 4/13/2018  | HAS  | $37     |
| 40 | 4/17/2018  | EAT  | $1,472  |
| 41 | 4/18/2018  | BEN  | $1,876  |
| 42 | 4/18/2018  | FDX  | $2,859  |

|    | **Rumor/Trade Date** | **Ticker Symbol** | **Salandra's Trading Profits** |
|----|----------------------|-------------------|-------------------------------|
| 43 | 4/19/2018 | EA | $3,258 |
| 44 | 4/20/2018 | WDC | $3,185 |
| 45 | 4/24/2018 | EOG | |
| 46 | 4/24/2018 | DISH | |
| 47 | 4/25/2018 | DKS | |
| 48 | 5/1/2018 | AZN | $478 |
| 49 | 5/2/2018 | CHKP | |
| 50 | 5/3/2018 | WDAY | $961 |
| 51 | 5/4/2018 | ALXN | |
| 52 | 5/9/2018 | ETFC | $1,027 |
| 53 | 5/15/2018 | FSLR | $3,256 |
| 54 | 5/16/2018 | SFM | $2,498 |
| 55 | 5/17/2018 | STX | $94 |
| 56 | 5/23/2018 | PZZA | $553 |
| 57 | 5/24/2018 | IP | $59 |
| 58 | 5/24/2018 | AKAM | |
| 59 | 5/30/2018 | CL | $635 |
| 60 | 5/31/2018 | AAL | $2,948 |
| 61 | 6/5/2018 | ETN | $3,135 |
| 62 | 6/14/2018 | TER | $115 |
| 63 | 6/20/2018 | REGN | $409 |
| 64 | 6/21/2018 | WYNN | $469 |
| 65 | 7/11/2018 | MO | $1,097 |
| 66 | 7/12/2018 | NKE | $1,832 |
| 67 | 7/20/2018 | CELG | $591 |
| 68 | 7/25/2018 | RHT | $163 |
| 69 | 7/26/2018 | PFE | $26 |
| 70 | 7/26/2018 | YELP | $2,405 |
| 71 | 7/31/2018 | CAH | $1,718 |
| 72 | 8/3/2018 | IBM | $4,506 |
| 73 | 8/3/2018 | OSTK | |
| 74 | 8/7/2018 | LB | |
| 75 | 8/8/2018 | WYNN | $4,788 |
| 76 | 8/9/2018 | GM | $1,976 |
| 77 | 8/15/2018 | IBM | |
| 78 | 8/22/2018 | EA | $4,093 |
| 79 | 8/22/2018 | DE | |
| 80 | 9/5/2018 | LNC | $580 |
| 81 | 9/21/2018 | AGN | $955 |
| 82 | 9/26/2018 | IP | $833 |
| 83 | 9/27/2018 | WDC | $213 |
| 84 | 11/9/2018 | KBH | $715 |
| 85 | 11/16/2018 | V | |

|    | **Rumor/Trade Date** | **Ticker Symbol** | **Salandra's Trading Profits** |
|----|------------|------|--------|
| 86 | 11/27/2018 | ETFC | $1 |
| 87 | 12/20/2018 | ATVI |    |
| 88 | 1/15/2019  | SFIX |    |
| 89 | 1/17/2019  | SKX  | $145 |
| 90 | 2/6/2019   | KMB  | $245 |
| 91 | 2/28/2019  | SYF  |    |
| 92 | 3/13/2019  | HBI  | $75 |

|   |   | TOTAL | $132,560 |